GARMAN TURNER GORDON LLP
GERALD M. GORDON, ESQ.
NV Bar No. 229
E-mail: ggordon@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
NV Bar No. 9040
E-mail: tgray@gtg.legal
MARK M. WEISENMILLER, ESQ.
NV Bar No. 12128
E-mail: mweisenmiller@gtg.legal
650 White Drive, Suite 100
Las Vegas, NV 89119
Telephone: (725) 777-3000
Facsimile: (725) 777-3112

HELLER, DRAPER, PATRICK, HORN, & DABNEY, L.L.C.
DOUGLAS S. DRAPER, ESQ.
LA Bar No. 5073*
E-mail: ddraper@hellerdraper.com
LESLIE A. COLLINS, ESQ.
LA Bar No. 14891*
E-mail: lcollins@hellerdraper.com
GRETA M. BROUPHY, ESQ.
LA Bar No. 26216*
E-mail: gbrouphy@hellerdraper.com
650 Poydras St., Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3300
Facsimile: (504) 299-3399
*pro hac vice application pending*

*Proposed Attorneys for Debtors*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | **BK-S-15-14589-abl** |
| MSAA LV PARTNERS, LLC. | |
| ☐ Affects this Debtor. | Chapter 11 |
| ☒ Affects ALL DEBTORS | JOINT ADMINISTRATION REQUESTED |
| ☐ Affects MSAA HOLDINGS, LLC | BK-S-15-14600-abl |
| ☐ Affects MSAA PA PARTNERS, LLC | BK-S-15-14599-abl |
| ☐ Affects MSAA PARTNERS, LLC | BK-S-15-14598-abl |

**EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 361, 362 AND 363 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 4001 AND LOCAL RULE 4001: (1) AUTHORIZING USEOF CASH COLLATERAL; (2) GRANTING ADEQUATE PROTECTION; (3) SCHEDULING AND APPROVING THE FORM AND METHOD OF NOTICE FOR A FINAL ORDER; AND (4) FOR RELATED RELIEF**

MSAA LV Partners, LLC, *et al,*[1] debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move (this "Motion") this Court for entry of an interim order pursuant to sections 361, 362, 363 and 507 of title 11 of the United

---

[1] MSAA LV Partners ("MSAA LV"), LLC, MSAA Holdings "(MSAA Holdings"), LLC, MSAA PA Partners ("MSAA PA Partners"), LLC, MSAA Partners, LLC ("MSAA Partners") have sought concurrently herewith, the joint administration of the above-captioned debtors.

States Code (11 U.S.C. §§ 101 *et seq.*, as amended, the "<u>Bankruptcy Code</u>"), Rule 4001 of the Federal Rules of Bankruptcy Procedure and Local Rule of Bankruptcy Practice 4001 (collectively, the "<u>Bankruptcy Rules</u>"), in substantially the form attached hereto as **<u>Exhibit "A"</u>** (the "<u>Proposed Interim Order</u>"): (1) authorizing Debtors on an interim basis pending a final hearing of this Motion to use cash collateral and the entry of a final order (the "<u>Final Order</u>" and together with the Interim Order, the "<u>Orders</u>"); (2) granting adequate protection; (3) scheduling and approving the form and method of notice of the final hearing on the Motion (the "<u>Final Hearing</u>"); and (4) for other related relief as necessary.   In further support of this Motion, Debtors respectfully state as follows:

## I.   <u>JURISDICTION AND GENERAL MATTERS</u>

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory bases for the relief requested herein are sections 361, 362, 363 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001.

3.      Pursuant to Local Rule 9014.2, the Debtors consent to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

4.      On August 11, 2015, MSAA LV filed for relief under Chapter 11 of the Bankruptcy Code, and on August 12, 2015 the remaining Debtors filed for relief under Chapter 11 of the Bankruptcy Code (the two dates, collectively the "<u>Petition Date</u>").  The Debtors continue to operate their business and manage their property as Debtors-in-Possession, pursuant

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

2

to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has yet been established.

5.     The *Omnibus Declaration in Support of the Debtors' First Day Motions and Applications* (the "Omnibus Declaration") filed concurrently herewith and incorporated herein by this reference provides a detailed discussion of the factual background and circumstances surrounding the Debtors' commencement of these Chapter 11 Cases, the Debtors' operations, the facts and circumstances necessitating entry of an order authorizing the Debtors to immediately pay their employees' pre-petition wages, related expenses, benefits, and taxes, and the resulting irreparable injury should the requested relief not be granted.

6.     The *Declaration in Support of Emergency Motion for Entry of Interim and Final Orders Pursuant to Sections 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001 Authorizing Use of Cash Collateral; (2) Granting Adequate Protection; (3) Scheduling and Approving the Form and Method of Notice for a Final Order; and (4) for Related Relief*  (the "Cash Collateral Declaration") filed in accordance with Local Rule 4001(b)(2) sets forth the nature and extent of the immediate and irreparable harm that will result if the interim relief is not granted.

7.     Attached hereto as **Exhibit "B"** is a proposed budget (as may be amended, supplemented, modified or extended from time to time with the consent of the Lender or upon approval by the Court, the "Proposed Budget") for the period from the Petition Date through October 31, 2015, which provides for the projected aggregate income and expenses of Debtors' operations in the ordinary course of business [as well as projected administrative expenses of the Chapter 11 Cases.  The Proposed Budget takes into account all operating costs incident to the case (including payroll, U.S. Trustee fees, food, power, etc.) and project sales at eighty-five percent (85%) of the prior year's sales figures.

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

3

8.      Notice of this Motion has been given to: (i) the United States Trustee; (ii) the twenty (20) largest unsecured creditors for each Debtor; (iii) Lender (as defined below); (iv) all parties who request notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; (v) the Internal Revenue Service; (vi) all parties identified on each of the Debtor's creditor matrix filed on the Petition Date; and (vii) all parties entitled to notice under Rule 2002(j) of the Federal Rules of Bankruptcy Procedure.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## II.  STATEMENT UNDER BANKRUPTCY RULE 4001 AND LOCAL RULE 4001

Pursuant to Bankruptcy Rule 4001(b)(1)(B) and (d)(1)(B), below is a summary of the material terms of the proposed agreement for use of Cash Collateral (as defined herein) as to  (together with reference to applicable sections of this Motion and the Proposed Interim Order):

a.  *Use of Cash Collateral*.  Use cash which may constitute Cash Collateral on an interim basis in accordance with the Proposed Interim Order and in accordance with the Budget, until the earlier of the entry of the Final Order and September 15, 2015, subject to the Events of Default and Termination Date. See, Section 32 below.

b.  *Interim Adequate Protection*.  Pursuant to the Interim Order the grant of adequate protection in favor of the Lender in the amount of any post-petition diminution in the value of the Lender's interest in cash which may constitute Cash Collateral or any of their respective Pre-Petition Collateral from and after the Petition Date to the extent such interests are entitled to adequate protection against such diminution under the Bankruptcy Code authorization and approval. See, Section 32 below and the Proposed Interim Order.

c.  *Final Adequate Protection*.  The Lender will be granted replacement security interests in and liens upon (collectively, the "Adequate Protection Liens") all post-petition property of the Debtors and their estates and all proceeds and products of such property (collectively, the "Post-Petition Collateral"), in each case to the same extent,

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}                                                          4

validity and priority as the Pre-Petition Liens in and upon the Prepetition Collateral. <u>See</u>, Section 33 below.

d. *Exceptions to Adequate Protection*. Neither the Adequate Protection Liens nor the Post-Petition Collateral shall include any claims, causes of action and proceeds thereof arising under sections 510, 544, 545, 546, 547, 548, 549, 550 and 551 of the Bankruptcy Code. <u>See</u>, Section 33 below and the Proposed Interim Order.

e. *Events of Default*. The occurrence of any of the following shall constitute an event of default (an "<u>Event of Default</u>"): (i) an Interim Order (in form and content acceptable to Lender) is not entered by August 18, 2015; (ii) a Final Order (in form and content acceptable to Lender) is not entered by September 15 2015; (iii) any Debtor files a motion to convert its Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (iv) any Debtor shall contract or agree to sell any of its real or personal property or assets, outside of the ordinary course of business, which are subject to the Pre-Petition Liens or Adequate Protection Liens without the prior written consent of the Lender; (v) any Debtor shall pledge or file a motion to pledge any of its real or personal property or assets to any entity other than the Lender, whether pursuant to section 364 of the Bankruptcy Code or otherwise, or allow, voluntarily or involuntarily, any liens or security interests to attach to a material portion of its assets other than liens and security interests existing as of or by reason of the Orders; (vi) the Debtors fail to file a motion pursuant to Section 363 of the Bankruptcy Code seeking approval to sell all or substantially all of their assets on or before August 30, 2015 and the approval of such sale with the entry of a final order of the Court acceptable to Lender on or before October 15, 2015; or (vii) yhe entry of an order granting relief from the automatic stay with respect to any property or asset of the Debtor with a value greater than $100,000. <u>See,</u>, Section 36 below.

f. *Termination*. With regard to the Proposed Interim Order until the earlier of the entry of the Final Order and September 15, 2015. With regard to Events of Default, upon the occurrence of an Event of Default. <u>See</u> Sections 32 and 36 below.

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

g. *Relief from Automatic Stay*. Upon the Termination Date, the Lender may seek expedited relief from any stay under section 362 of the Bankruptcy Code or other restriction in the enforcement of its liens and security interests under the Pre-Petition Loan Documents and/or the Orders. The Lender and Debtors agree that the Lender may seek an expedited hearing before this Court to consider the entry of such order upon three (3) business days after certification by the Lender of an Event of Default to the Debtors, the United States Trustee, the Committee, any creditors who assert an interest in Cash Collateral, any taxing authorities to which the Debtors is indebted, and any parties requesting notice under Bankruptcy Rule 2002, and the Debtors reserve and preserve all rights to object to any Default Notice, request of the Lender for relief from any stay under section 362 of the Bankruptcy Code. See, Section 37 below.

h. *Carve Out for Professional Fees and Costs*. The Post-Petition Collateral, Adequate Protection Claims and the Adequate Protection Liens granted to the Lender (and any other lender claiming an interest in Debtors' cash which may constitute Cash Collateral) by this Court should be subject to the right of payment of unpaid fees, expenses and costs (the "Carve-Out"), of the following: (i) Court costs and U.S. Trustee's fees; (ii) for fees and costs allowed pursuant to sections 330 and 331 of the Bankruptcy Code of bankruptcy counsel and other professionals retained by the Debtors pursuant to sections 327 and 328 in an amount not to exceed $150,000 in addition to any retainers received by such counsel and other professionals prior to the Petition Date; and (iii) for fees and costs allowed pursuant to sections 330 and 331 of the Bankruptcy Code of any professionals retained pursuant to sections 327 and 328 of the Bankruptcy Code by any official committee of unsecured creditors or other similar committee appointed by the Bankruptcy Court in an amount not to exceed $50,000. See, Section 38 below.

### III.  BACKGROUND

1.     Debtors own and/or operate several Long John Silver ("LJS") franchises in three (3) states.

2.     The Debtors entered into a series of loan as more fully described below with GE Capital Franchise Finance Corporation ("GEFF"), Citicorp Leasing, Inc. ("Citicorp") and General Electric Capital Corporation ("GECC"; together with GEFF, Citicorp, and each of their respective assignees, including General Electric Capital Business Asset Funding Corp. of Connecticut, GECPAC Investment I, Inc., and Colonial Pacific Leasing Corporation, collectively, the "Lender").

3.     As set forth in the Cash Collateral Declaration, Lender consents to the use of Cash Collateral (as defined below) conditioned upon the entry of the Proposed Interim Order and the relief and protections provided for therein.

**Prepetition Loans and Collateral**

**A.  Loan A**

4.     On August 15, 2006, the Lender and MSAA Partners LLC ("MSAA Partners") and non-debtor MSAA Ohio Partners, LLC ("MSAA Ohio") entered into that certain Equipment Loan and Security Agreement, as amended by that certain Amendment to Loan Documents dated August 19, 2008 (as amended, restated or otherwise modified from time to time, the "Loan A Loan Agreement"), pursuant to which the Lender agreed to extend certain credit facilities to MSAA Partners and MSAA Ohio as set forth more fully therein.

5.     To evidence the obligations under the Loan A Loan Agreement, MSAA Partners and MSAA Ohio executed and delivered to the Lender that certain Equipment Promissory Note dated August 15, 2006 in the original principal amount of $1,414,000 (as amended, restated or otherwise modified from time to time, the "Loan A $1.4MM Note") and that certain Equipment

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

7

Promissory Note dated August 19, 2008 in the original principal amount of $102,329.42 (as amended, restated or otherwise modified from time to time, the "Loan A $102K Note" and collectively with the Loan A $1.4MM Note, the "Loan A Notes," and together with the Loan A Loan Agreement,  the "Loan A Loan Documents").

**B.    Loan B**

6.    On August 23, 2006, the Lender and MSAA Partners entered into that certain Equipment Loan and Security Agreement (as amended, restated or otherwise modified from time to time, the "Loan B Loan Agreement"), pursuant to which the Lender agreed to extend certain credit facilities to MSAA Partners as set forth more fully therein.

7.    To evidence the obligations under the Loan B Loan Agreement, MSAA Partners executed and delivered to the Lender that certain Equipment Promissory Note dated August 23, 2006 in the original principal amount of $1,912,500 (as amended, restated or otherwise modified from time to time, the "Loan B Note, and together with the Loan B Loan Agreement, the Leasehold Interest Mortgages (defined below), collectively the "Loan B Loan Documents").

8.    As further security for the Loan B Note and related obligations, MSAA Partners entered into (a) that certain Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing effective August 23, 2006 in favor of the Lender, granting the Lender a senior mortgage lien on the leasehold interest in the real property with the address of 824 W. Pike Street, Clarksburg, West Virginia (the "Clarksburg Mortgage"); and (b) that certain Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing effective August 23, 2006 in favor of the Lender, granting the Lender a senior mortgage lien on the leasehold interest in the real property with the address of 240 Emily Drive, Clarksburg, West Virginia (the "Clarksburg II Mortgage"); and (c) that certain Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing effective August 23, 2006 in favor of the Lender, granting

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

8

the Lender a senior mortgage lien on the leasehold interest in the real property with the address of 770 National Road, Wheeling, West Virginia (the "Wheeling Mortgage"); and (d) that certain Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing effective August 23, 2006 in favor of the Lender, granting the Lender a senior mortgage lien on the leasehold interest in the real property with the address located Belmont County, Ohio (the "Belmont Mortgage"; together with the Clarksburg Mortgage, the Clarksburg II Mortgage, the Wheeling Mortgage, collectively, the "Leasehold Interest Mortgages").

      **C.**     **Loan C**

9. On January 26, 2007, the Lender and non-debtor MSAA NV Partners LLC ("MSAA NV") and Debtor MSAA Holdings LLC ("MSAA Holdings") entered into that certain Loan Agreement, as amended pursuant to that certain First Amendment to Loan Documents dated September 10, 2007 and that certain Second Amendment to Loan Documents dated June 4, 2008 (as further amended, restated or otherwise modified from time to time, the "Loan C Loan Agreement"), pursuant to which the Lender agreed to extend certain credit facilities to MSAA NV and MSAA Holdings, as set forth more fully therein.

10. To evidence the obligations under the Loan C Loan Agreement, MSAA NV and MSAA Holdings executed and delivered to Lender certain promissory notes, including that certain Promissory Note dated January 26, 2007 in the original principal amount of $1,232,000 (as amended, restated or otherwise modified from time to time, the "Loan C $1.2MM Note"), that certain Promissory Note dated January 26, 2007 in the original principal amount of $1,600,000 (as amended, restated or otherwise modified from time to time, the "Loan C $1.6MM Note"), that certain Promissory Note dated September 10, 2007 in the original principal amount of $943,000 (as amended, restated or otherwise modified from time to time, the "Loan C $943M Note"), that certain Promissory Note dated June 4, 2008 in the original principal amount of

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

9

$575,000 (as amended, restated or otherwise modified from time to time, the "Loan C $575M Note"), and that certain Promissory Note dated June 4, 2008 in the original principal amount of $625,000 (as amended, restated or otherwise modified from time to time, the "Loan C $625M Note" and collectively with the Loan C $1.2MM Note, the Loan C $1.6MM Note, the Loan C $943M Note and the Loan C $575M Note, the "Loan C Notes," and together with the Loan C Loan Agreement and the other documents executed in connection therewith, the "Loan C Loan Documents").

### D.    Loan D

11.    On February 25, 2008, the Lender and Debtor MSAA LV Partners, LLC ("MSAA LV") entered into that certain Loan and Security Agreement (as amended, restated or otherwise modified from time to time, the "Loan D Loan Agreement"), pursuant to which the Lender agreed to extend certain credit facilities to MSAA LV as set forth more fully therein.

12.    To evidence the obligations under the Loan D Loan Agreement, MSAA LV executed and delivered to the Lender that certain Promissory Note dated February 25, 2008 in the original principal amount of $1,256,000 (as amended, restated or otherwise modified from time to time, the "Loan D Note," and together with the Loan D Loan Agreement, the "Loan D Loan Documents").

13.    In connection with the Loan D Loan Agreement, the Debtors MSAA Partners, MSAA Holdings and MSAA PA Partners each executed a Guaranty dated February 25, 2008 in favor of Lender (as amended, restated or otherwise modified from time to time, the "Loan D Guaranty") pursuant to which these Debtors absolutely, unconditionally and irrevocably guaranteed to promptly and fully perform, pay, and discharge all liabilities, obligations and indebtedness owed by MSAA LV to the Lender under the Loan D Loan Documents.

. . .

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

10

E.    **Loan E**

14.    On May 30, 2008, the Lender, non-Debtor MSAA Ohio and Debtors MSAA Holdings, MSAA Partners and MSAA PA Partners entered into that certain Loan Agreement (as amended, restated or otherwise modified from time to time, the "Loan E Loan Agreement"), pursuant to which the Lender agreed to extend certain credit facilities to MSAA Holdings, MSAA Ohio, MSAA Partners and MSAA PA, as set forth more fully therein.

15.    To evidence the obligations under the Loan E Loan Agreement, MSAA Holdings, MSAA Ohio, MSAA Partners and MSAA PA executed and delivered to the Lender that certain Promissory Note dated May 30, 2008 in the original principal amount of $8,232,000 (as amended, restated or otherwise modified from time to time, the "Loan E Note" and together with the Loan E Loan Agreement and the other documents executed in connection therewith, the "Loan E Loan Documents").

16.    In connection with the Loan E Loan Agreement, the Debtors MSAA Partners, MSAA LV Partners and MSAA NV Partners each executed a Guaranty dated May 30, 2008 in favor of the Lender (as amended, restated or otherwise modified from time to time, the "Loan E Guaranty") pursuant to which such Debtors absolutely, unconditionally and irrevocably guaranteed to promptly and fully perform, pay, and discharge all liabilities, obligations and indebtedness owed by MSAA Holdings, MSAA Ohio, MSAA Partners and MSAA PA to the Lender under the Loan E Loan Documents.

17.    As further security for the Loan E Note and related obligations, MSAA Holdings entered into (a) that certain Mortgage, Security Agreement, Assignment of Rents and Fixture Filing dated May 27, 2008 but effective May 30, 2008 in favor of the Lender, granting the Lender a senior mortgage lien on the real property with the address of 2417 Brownsville Road, Pittsburgh Pennsylvania (the "Pittsburgh Mortgage"); and (b) that certain Mortgage, Security

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

11

Agreement, Assignment of Rents and Fixture Filing dated May 27, 2008 but effective May 30, 2008 in favor of the Lender, granting the Lender a senior mortgage lien on the real property with the address of 807 W View Park Drive, West View Pennsylvania (the "<u>West View Mortgage</u>"; together with the Pittsburgh Mortgage, collectively, the "<u>Fee Interest Mortgages</u>").

### F.   <u>Loan F</u>

18.   On August 18, 2008, the Lender and non-debtor MSAA Ohio entered into that certain Loan and Security Agreement (as amended, restated or otherwise modified from time to time, the "<u>Loan F Loan Agreement</u>" and collectively with the Loan A Loan Agreement, the Loan B Loan Agreement, the Loan C Loan Agreement, the Loan D Loan Agreement and the Loan E Loan Agreement, the "<u>Loan Agreements</u>"), pursuant to which the Lender agreed to extend certain credit facilities to MSAA Ohio as set forth more fully therein.

19.   To evidence the obligations under the Loan F Loan Agreement, MSAA Ohio executed and delivered to the Lender that certain Promissory Note dated August 18, 2008 in the original principal amount of $637,100 (as amended, restated or otherwise modified from time to time, the "<u>Loan F Note</u>" and collectively with the Loan A Notes, the Loan B Note, the Loan C Notes, the Loan D Note and the Loan E Note, the "<u>Notes</u>" and together with the Loan F Loan Agreement and the other documents executed in connection therewith, the "<u>Loan F Loan Documents</u>").

20.   In connection with the Loan F Loan Agreement, non-debtor MSAA NV Partners and the Debtors MSAA Partners, MSAA Holdings, MSAA PA Partners and MSAA LV Partners each executed a Guaranty dated August 18, 2008 in favor of the Lender (as amended, restated or otherwise modified from time to time, the "<u>Loan F Guaranty</u>" and collectively with the Loan A Guaranty, the Loan B Guaranty, the Loan C Guarantees, the Loan D Guaranty and the Loan E Guaranty, the "<u>Guarantees</u>"), pursuant to which such Debtors absolutely, unconditionally and

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

12

irrevocably guaranteed to promptly and fully perform, pay, and discharge all liabilities, obligations and indebtedness owed by MSAA Ohio to the Lender under the Loan F Loan Documents.

**G.     The Forbearance Agreements**

21.     Following defaults by the Debtors under the Loan Agreements, the Notes and the Guarantees, on or about May 19, 2014, the Debtors and the Lender entered into a Forbearance Agreement (the "Original Forbearance Agreement").

22.     On or about July 7, 2014, the Debtors and the Lender entered into a Limited Forbearance (the "Limited Forbearance").  The Limited Forbearance, among other things, modified the terms of the Original Forbearance Agreement as stated therein.

23.     In October 2014, the Debtors and the Lender entered into a Second Forbearance Agreement (the "Second Forbearance Agreement" and collectively with the Original Forbearance Agreement and the Limited Forbearance, the "Forbearance Agreements").  The Second Forbearance Agreement, among other things, modified the terms of the Original Forbearance Agreement and the Limited Forbearance as stated therein.

24.     The Loan A Loan Documents, the Loan B Loan Documents, the Loan C Loan Documents, the Loan D Loan Documents, the Loan E Loan Documents, the Loan F Loan Documents and the Forbearance Agreements, together with all other documents executed in connection with all of the foregoing, shall be collectively referred to herein as the "Pre-Petition Loan Documents".

25.     Pursuant to the Pre-Petition Loan Documents, the obligations owing under the Pre-Petition Loan Documents are cross-collateralized and cross-defaulted.

. . .

. . .

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

13

**H.     Defaults under the Loan Documents and Forbearance Agreements**

26.     The Debtors are in default under the Pre-Petition Loan Documents by virtue of the occurrence and continuance of certain defaults and/or Events of Default, which include certain of those Events of Default set forth in the Second Forbearance Agreement (collectively, the "Events of Default").

27.     The Second Forbearance Agreement terminated on November 30, 2014 (the "Forbearance Termination Date").

28.     By letter dated January 16, 2015, the Debtors received a Notice of Default, which notified the Debtors of the occurrence of the Forbearance Termination Date and the Lenders' ability to exercise the rights and remedies available to them under the Pre-Petition Loan Documents.

29.     Despite receipt of the Notice of Default, the Debtors have failed to cure the Events of Default.

30.     The amount due and owing under the Pre-Petition Loan Documents, after acceleration and not including attorneys' fees and costs, totaled not less than $5,539,871 as of August 7, 2015, which includes the following:

a.     $50,206  due under Loan A;

b.     $638,615 due under Loan B;

c.     $260,100 due under Loan C;

d.     $622,727 due under Loan D;

e.     $3,593,016 due under Loan E; and

f.     $375,207 due under Loan F.

31.     The Lender asserts that the Pre-Petition Loan Documents grant the Lender a first priority lien (together with the Fee Interest Mortgages and the Leasehold Interest Mortgages,

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}                                                    14

collectively, the "Pre-Petition Liens" on all assets of the Debtors (together with the property secured by the Fee Interest Mortgages and the property secured by the Leasehold Interest Mortgages, collectively, the "Pre-Petition Collateral").  The Lender perfected its liens by, among other things, filing UCC-1 Financing Statements in the state of formation of each respective Debtor.

## IV. **RELIEF REQUESTED**

32.    **Interim Order**.  By this Motion, the Debtors respectfully requests pending the Final Hearing and the entry of a Final Order (a) authorization and approval, pursuant to sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rule 4001(c)(2) and Local Rule 4001(b), to (i) use cash which may constitute Cash Collateral (as defined below) on an interim basis in accordance with the Proposed Interim Order and in accordance with the Budget,[2] until the earlier of the entry of the Final Order and September 15, 2015, subject to the Events of Default and Termination Date as provided below, (ii)  the grant of adequate protection in favor of the Lender in the amount of any post-petition diminution in the value of the Lender's interest in cash which may constitute Cash Collateral or any of their respective Pre-Petition Collateral from and after the Petition Date to the extent such interests are entitled to adequate protection against such diminution under the Bankruptcy Code (the "Adequate Protection Claim").

33.    **Final Order**.  In addition to the provisions contained in the Proposed Interim Order, the Final Order shall  provide;

a.        That in order to secure the Adequate Protection Claim, the Lender will be granted replacement security interests in and liens upon (collectively, the "Adequate

---

[2] With respect to the Budget, the Debtors seek authority (a) to exceed each line item in the Budget by up to ten percent (10%), so long as the aggregate amount of the Budget on a monthly basis is not exceeded by more than twenty percent (20%), and (b) subject to the foregoing, to use any budgeted amount for expenditures which are not made in a particular monthly period in any other period; provided, however, that the Debtors may not exceed the line item entitled "GNA Expenses" at any time without the prior written consent of the Lender.

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

15

Protection Liens") all post-petition property of the Debtors and their estates and all proceeds and products of such property (collectively, the "Post-Petition Collateral"), in each case to the same extent, validity and priority as the Pre-Petition Liens in and upon the Prepetition Collateral.

b.    The respective Adequate Protection Liens shall be subject only to valid, perfected, enforceable and unavoidable liens and security interests granted by the Debtors or operation of law to any person or entity that were superior in priority to the Pre-Petition Liens and only to the extent such Pre-Petition Liens are not otherwise subject to avoidance or subordination, if any.  Notwithstanding the foregoing or anything herein to the contrary, neither the Adequate Protection Liens nor the Post-Petition Collateral shall include any claims, causes of action and proceeds thereof arising under sections 510, 544, 545, 546, 547, 548, 549, 550 and 551 of the Bankruptcy Code (collectively, "Avoidance Actions"), and shall be subject to the "Carve Out" as provided for below.

c.    Each Debtor shall waive any right it may have as of the date of the Final Order to contest, setoff against, counterclaim, or seek other defense to or reduction of the Pre-Petition Obligations, Pre-Petition Liens, and/or Pre-Petition Loan Documents. Notwithstanding, all rights, claims and causes of action of any sort that may be raised on behalf of an official committee (including derivatively on behalf of the Debtors) and the Debtors' estates against the Lender, including, without limitation, the rights of the Committee to challenge the validity, extent or priority of such parties' security interests in and liens upon the Pre-Petition Collateral and the Post-Petition Collateral, are specifically reserved.

34.    **Perfection**.  The Adequate Protection Liens shall be deemed perfected by the terms of the Proposed Interim Order and Final Order, as applicable, and the Lender shall not need to take any further action or make any further filing to perfect the lien and security interest in the Post-Petition Collateral.

35. **Books and Records**. The Debtors shall keep their books and records of original entry, including without limitation, records of sale, credits authorized (whether or not credit memoranda have been issued), purchases, accounts receivable, cash receipts, and cash disbursements, current and updated, so that all business activity is posted to them in the ordinary course of the Debtors' business.

36. **Events of Default**. The occurrence of any of the following shall constitute an event of default (an "Event of Default"):

a. An Interim Order (in form and content acceptable to Lender) is not entered by August 18, 2015;

b. A Final Order (in form and content acceptable to Lender) is not entered by September 15 2015;

c. Any Debtor shall fail to keep, observe, or perform any of its material agreements or undertakings hereunder;

d. Any Debtor shall contest any Pre-Petition Obligation, Pre-Petition Loan Document, or Pre-Petition Lien or other lien or security interest of the Lender, file any claim, complaint, adversary proceeding, suit, demand, action, or cause of action against the Lender with this Court, or seek to have this Court annul, modify, or amend any part of the Orders without the prior written consent of the Lender;

e. Any Debtor shall suffer the appointment of a trustee or examiner with expanded powers;

f. Any of the Chapter 11 Cases is converted to a case under chapter 7 of the Bankruptcy Code, or any Debtor files a motion to convert its Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

17

g.    Any Debtor shall contract or agree to sell any of its real or personal property or assets, outside of the ordinary course of business, which are subject to the Pre-Petition Liens or Adequate Protection Liens without the prior written consent of the Lender;

h.    Any Debtor shall pledge or file a motion to pledge any of its real or personal property or assets to any entity other than the Lender, whether pursuant to section 364 of the Bankruptcy Code or otherwise, or allow, voluntarily or involuntarily, any liens or security interests to attach to a material portion of its assets other than liens and security interests existing as of or by reason of the Orders;

i.    The Debtors fail to file a motion pursuant to Section 363 of the Bankruptcy Code seeking approval to sell all or substantially all of their assets on or before August 30, 2015 and the approval of such sale with the entry of a final order of the Court acceptable to Lender on or before October 15, 2015; or

j.    The entry of an order granting relief from the automatic stay with respect to any property or asset of the Debtor with a value greater than $100,000.

37.    **Termination Date**.  Upon the Termination Date (as a result of the occurrence of an Event of Default which shall be a Termination Date event or otherwise), the Debtors' right to use Cash Collateral shall automatically and immediately terminate unless otherwise agreed to by the Lender in writing. Notwithstanding the foregoing, nothing contained in the Orders shall prohibit the Debtors from filing a motion, on an expedited basis or otherwise, for authority to use cash collateral following an Event of Default or an objection to a Default Notice. Upon the Termination Date, the Lender may seek expedited relief from any stay under section 362 of the Bankruptcy Code or other restriction in the enforcement of its liens and security interests under the Pre-Petition Loan Documents and/or the Orders. The Lender and Debtors agree that the Lender may seek an expedited hearing before this Court to consider the entry of such order upon

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

18

three (3) business days after certification by the Lender of an Event of Default to the Debtors, the United States Trustee, the Committee, any creditors who assert an interest in Cash Collateral, any taxing authorities to which the Debtors is indebted, and any parties requesting notice under Bankruptcy Rule 2002, and the Debtors reserve and preserve all rights to object to any Default Notice, request of the Lender for relief from any stay under section 362 of the Bankruptcy Code or otherwise. Notwithstanding the foregoing and notwithstanding anything to the contrary in the Orders, any payments to be made to any professionals for the Debtors or the Committee pursuant to an Order or the Budget, shall be paid and/or retained in escrow, pending and subject to Court approval pursuant to sections 330 or 331 of the Bankruptcy Code, to such professional, notwithstanding any failure by the Debtors prior to the Termination Date to have actually paid such amount.

38. **Carve Out**. The Post-Petition Collateral, Adequate Protection Claims and the Adequate Protection Liens granted to the Lender (and any other lender claiming an interest in Debtors' cash which may constitute Cash Collateral) by this Court should be subject to the right of payment of unpaid fees, expenses and costs (the "Carve-Out"), of the following:

(a) Court costs and U.S. Trustee's fees;

(b) for fees and costs allowed pursuant to sections 330 and 331 of the Bankruptcy Code of bankruptcy counsel and other professionals retained by the Debtors pursuant to sections 327 and 328 in an amount not to exceed $150,000 in addition to any retainers received by such counsel and other professionals prior to the Petition Date; and

(c) for fees and costs allowed pursuant to sections 330 and 331 of the Bankruptcy Code of any professionals retained pursuant to sections 327 and 328 of the Bankruptcy Code by any official committee of unsecured creditors or other similar committee appointed by the Bankruptcy Court in an amount not to exceed $50,000.

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

19

39.     In addition to the Carve-Out, expenses paid pursuant to the Budget under the Orders authorizing the use of Cash Collateral shall, upon payment thereof, be free and clear of any Adequate Protection Claims and/or Adequate Protection Liens and shall not be subject to recovery by Lender or any Chapter 7 or Chapter 11 trustee or other person or entity on account of any unpaid Adequate Protection Claims.

40.     Debtors do not believe any other creditor asserts a lien on cash and cash equivalents which may constitute Cash Collateral; however, to the extent, a party, other than Lender, asserts a lien on cash which may constitute Cash Collateral, to the extent of any valid lien, Debtors propose to grant that party a replacement lien on post-Petition Date assets having the same respective priority as its prepetition liens, subject to the Carve-Out and the Adequate Protection Liens and Adequate Protection Claims granted to Lender.

## V. <u>DISCUSSION</u>

41.     **General Authority.**  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may use cash collateral with court approval and after notice and a hearing. Debtors seek authority to use rents, credit card deposits and proceeds of such deposits (collectively, to the extent such rents, credit card deposits constitute Cash Collateral, the "<u>Cash Collateral</u>")[3], in which Lender may assert a valid and perfected security interest.  Pursuant to section 363(e) of the Bankruptcy Code, the Court may condition the use of such cash collateral "as is necessary to provide adequate protection of" the interests of Lender in the Cash Collateral. Pursuant to section 361 of the Bankruptcy Code, when a secured party's interest in cash collateral is entitled to adequate protection, such adequate protection may be provided by, among other things, an additional or replacement lien on assets generated post-petition "to the extent that such … use … results in a decrease in value of such entity's interest in the cash."

---

[3]  The Debtors reserve their rights with respect to whether their post-petition revenues constitute cash collateral under section 363(a) of the Bankruptcy Code.

{00348134-2}

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

**B.    The Need for Use of Cash Collateral**

42.    Debtors have an immediate need to use Cash Collateral for the purpose of meeting necessary expenses incurred in the ordinary course of its business, paying operating expenses, including payroll, and the costs associated with its restructuring and this proceeding, while it restructures and reorganizes its indebtedness and businesses in a manner that maximizes value and is fair and equitable to all parties in interest.    Further, the expenditure of Cash Collateral is necessary in order to preserve the value of the Collateral.

43.    The Budget provides for the payment of essential ordinary course operating expenses during the Budget period.    Ceasing operations is not in the best interests of any party to this Chapter 11 Cases, including Lender, as Debtors' failure to operate will immediately and irreparably impair (a) Debtors' extrinsic value and (b) Debtors' ability to use Cash Collateral to generate cash proceeds in excess of the amount of the Petition Date Cash Collateral.

44.    Additionally, to the extent the Budget provides for payment of restructuring costs, including periodic payments to professionals engaged in these Chapter 11 Cases, as long as Lender is adequately protected, Debtors' use of the Cash Collateral to pay its professionals is allowed.    See In re Proalert, LLC, 314 B.R. 436 (9th Cir. B.A.P. 2004) ("plain language of §363 allows a debtor to use cash collateral [to pay its professionals] if the secured creditor's interest is adequately protected"); In re Coventry Commons Assoc., 149 B.R. 109 (Bankr. E.D. Mich. 1992) (a debtor may use cash collateral to pay professional fees if the secured creditor is adequately protected, without regard to requirements of section 506 of the Bankruptcy Code); In re Tri-County Water Ass'n., Inc., 91 B.R. 547, 550 (Bankr. D.S.D. 1988) (generally, only unencumbered assets may be used to pay administrative claimants, but such claims may be paid from collateral if they resulted in a direct benefit to the secured creditor, if the secured creditor consents or if the secured creditor is adequately protected).    As discussed above, Lender is

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

21

adequately protected; thus, payment of Debtors' professional fees and expenses using the Cash Collateral is proper.

45.     Without the use of Cash Collateral on a limited basis as described herein, Debtors will not be able to pay those persons performing services at the property and other direct operating expenses.  Inability to use Cash Collateral on the basis set forth in the Budget would result in an immediate cessation of the ongoing operations of Debtors' business and would cause irreparable harm to Debtors' estate.  Put simply, Debtors cannot continue operations and pursue its restructuring efforts absent use of Cash Collateral.  For this reason, the Motion is being presented on an emergency interim basis.

**C.     Proposed Adequate Protection**

46.     The restriction of a debtor's use of cash collateral should only occur where facts show that failure to restrict use may "impair" creditors and deny creditors adequate protection. In re Triplett, 87 B.R. 25, 27 (Bankr. W.D. Tex. 1988).  Whether or not a creditor is adequately protected is determined on a case-by-case basis.  See In re Energy Partners, Inc., 409 B.R. 211, 236 (Bankr. S.D. Tex 2009) (stating that exactly what constitutes adequate protection must be decided on a case by case basis); In re Self, 239 B.R. 877, 881 (Bankr. N.D. Tex. 1999) (determination of adequate protection is not an "exact science"; rather, it requires a court to balance all relevant factors); In re O'Connor, 808 F.2d 1393, 1396 (10th Cir. 1987) (stating that the concept of adequate protection is a flexible one and that courts should determine whether it exists on a case-by-case basis); In re JKJ Chevrolet, Inc., 190 B.R. 542, 545 (Bankr. E.D. Va. 1995) (stating that adequate protection is determined on a case-by-case basis).

47.     Adequate protection exists by virtue of augmentation (or preservation) of the value of a secured creditor's collateral.  See In re Ralar Distribs., Inc., 166 B.R. 3, 6 (Bankr. D. Mass. 1994) ("[a]ctivities of a debtor can enhance collateral value and thereby provide adequate

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}                                                     22

protection"); <u>In re T.H.B. Corp.</u>, 85 B.R. 192, 195 (Bankr. D. Mass. 1988) ("[T]he stream of cash collateral will likely remain at an approximate even level over a sustained period, with new proceeds replacing old.  The constant nature of this stream gives the [Lenders] protection for its cash collateral."); <u>In re Pursuit Athletic Footwear, Inc.</u>, 193 B.R. 713, 716-717 (Bankr. D. Del. 1996) (court found secured creditor was adequately protected given lack of evidence that collateral was diminishing, debtor had operated profitably and was projected to continue operating profitably); <u>In re Pine Lake Vill. Apartment Co</u>., 19 B.R. 819 (Bankr. S.D.N.Y. 1982) (where property which secured mortgagee's claim was experiencing no depreciation and was arguably being enhanced in value and where the value of the property securing the claim was increasing to the extent of unspent rental income being accumulated in segregated cash collateral accounts, mortgagee had adequate protection).

48.    As additional adequate protection, Lender will be granted, effective immediately and without the necessity of the execution by Debtors of financing statements, mortgages, security agreements, or otherwise, in accordance with section 361(2) of the Bankruptcy Code, the Adequate Protection Liens on the Post-Petition Collateral, in the same respective priority it held prior to the Petition Date, and subject to (a)  the Carve-Out and (b) valid, perfected, enforceable and nonavoidable liens and security interests granted by law or by Debtors to any person or entity that were superior in priority to the Pre-Petition Liens, and only to the extent such prepetition senior liens are not otherwise subject to avoidance or subordination. Notwithstanding the foregoing or anything herein to the contrary, the Post-Petition Collateral and Adequate Protection Liens shall not include any Avoidance Actions.

49.    Debtors assert that all Cash Collateral now existing and hereafter acquired will be deposited and maintained by Debtors in certain bank accounts, pending disbursement in the

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

23

ordinary course of business of Debtors, consistent with the provisions of the Orders and the Budget.

**C.**     **Interim Approval of the Use of Cash Collateral Should Be Granted.**

50.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

51.     Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001(b), Debtors request that the Court conduct a preliminary expedited hearing on the Motion as soon as practicable (the "Preliminary Hearing") to enter the Proposed Interim Order on the Motion authorizing Debtors to use Cash Collateral in an aggregate amount not to exceed the amounts set forth in the Budget pending the Final Hearing.

52.     The ability of Debtors to use Cash Collateral for its ongoing operations as it restructures its indebtedness and businesses is in the best interests of Debtors, their creditors and their estates.  The relief requested herein is necessary in order to avoid immediate and irreparable harm and prejudice to Debtors' estates and to parties in interest in Debtors' chapter 11 cases. Debtors have an urgent and immediate need to use Cash Collateral to continue their business operations while they pursue a restructuring or alternate exit to this Chapter 11 Case.  Debtors' business will be immediately and irreparably harmed without authorization from the Court to use Cash Collateral, as requested, on an interim basis pending the Final Hearing, and Debtors' restructuring efforts will be over.

53.     The interests of Lender (and any other lender or creditor who claims an interest in Cash Collateral) in the Cash Collateral will be adequately protected pursuant to the Proposed

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

24

Interim Order. As indicated by the Budget, Debtors' operations will be cash flow positive during the period covered therein after payment of essential expenses and expenses related to the administration of this Chapter 11 Case. Additionally, the value of Debtors' hard assets will not decline during the Budget period, because the Property will be properly maintained.

54. The terms of the Proposed Interim Order are incorporated herein and made a part hereof by this reference. Pending the Final Hearing, this Motion should be granted on an interim basis on the terms set forth in the Proposed Interim Order in order to maximize the value of the estates and to prevent irreparable harm to Debtors prior to the Final Hearing.

## VI. REQUEST FOR FINAL HEARING

55. Finally, pursuant to Bankruptcy Rule 4001(c)(2), Debtors respectfully request that this Court set a date for the Final Hearing that is no earlier than fourteen (14) days after service of this Motion and approve the provisions for notice of such Final Hearing that are set forth in the Proposed Interim Order.

56. Debtors request that they be authorized to serve a copy of the Proposed Interim Order when entered by this Court, which Proposed Interim Order fixes the time and date for filing objections, if any, by first-class United States Mail upon counsel to Lender, all other possible secured creditors of record, the Office of the United States Trustee, Debtors' twenty (20) largest creditors on a consolidated basis and any party having filed a request to receive service in Debtors' Chapter 11 Case. Debtors request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

**WHEREFORE**, the Debtors respectfully requests that this Court (a) conduct an emergency hearing on this Motion; (b) enter the Proposed Interim Order substantially in the form submitted herewith; (c) schedule a Final Hearing on the relief requested herein; and (d) grant such further relief as may be equitable and just.

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

{00348134-2}

25

Dated this 12th _day of August, 2015.

GARMAN TURNER GORDON LLP

By: _____
GERALD M. GORDON, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARK M. WEISENMILLER, ESQ.
650 White Drive, Suite 100
Las Vegas, NV 89119

and

HELLER, DRAPER, PATRICK, HORN
 & DABNEY, L.L.C.
DOUGLAS S. DRAPER, ESQ.
LESLIE A. COLLINS ESQ.
GRETA M. BROUPHY, ESQ.
650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103

*Proposed Attorneys for Debtors*

{00348134-2}

Garman Turner Gordon
LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000