| | |
|---|---|
| GARMAN TURNER GORDON LLP | HELLER, DRAPER, PATRICK, HORN, & |
| GERALD M. GORDON, ESQ. | DABNEY, L.L.C. |
| NV Bar No. 229 | DOUGLAS S. DRAPER, ESQ. |
| E-mail: ggordon@gtg.legal | LA Bar No. 5073* |
| TALITHA GRAY KOZLOWSKI, ESQ. | E-mail: ddraper@hellerdraper.com |
| NV Bar No. 9040 | LESLIE A. COLLINS, ESQ. |
| E-mail: tgray@gtg.legal | LA Bar No. 14891* |
| MARK M. WEISENMILLER, ESQ. | E-mail: lcollins@hellerdraper.com |
| NV Bar No. 12128 | GRETA M. BROUPHY, ESQ. |
| E-mail: mweisenmiller@gtg.legal | LA Bar No. 26216* |
| 650 White Drive, Suite 100 | E-mail: gbrouphy@hellerdraper.com |
| Las Vegas, NV 89119 | 650 Poydras St., Suite 2500 |
| Telephone: (725) 777-3000 | New Orleans, LA 70130 |
| Facsimile: (725) 777-3112 | Telephone: (504) 299-3300 |
| | Facsimile: (504) 299-3399 |
| | *pro hac vice application pending* |

*Proposed Attorneys for Debtors*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | |
| MSAA LV PARTNERS, LLC. | **BK-S-15-14589-abl** |
| ☐ Affects this Debtor. | Chapter 11 |
| ☒ Affects ALL DEBTORS | JOINT ADMINISTRATION REQUESTED |
| ☐ Affects MSAA HOLDINGS, LLC | BK-S-15-14600-abl |
| ☐ Affects MSAA PA PARTNERS, LLC | BK-S-15-14599-abl |
| ☐ Affects MSAA PARTNERS, LLC | BK-S-15-14598-abl |

**MOTION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 105, 363, 364, 1107 AND 1108 AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS, CONTINUED USE OF EXISTING BUSINESS FORM, CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM UP TO NOVEMBER 1, 2015 AND FOR RELATED RELIEF**

MSAA LV Partners, LLC, *et al*,[1] debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move (the "Motion") the Court for entry of an order pursuant to Sections 105, 363, 364, 1107 and 1108 of title 11 of the United States Code (11 U.S.C. §§ 101 et seq., as amended, the "Bankruptcy Code"), authorizing the Debtors to maintain their existing bank accounts, to continue to use existing business forms, to

---

[1] MSAA LV Partners, LLC, MSAA Holdings, LLC, MSAA PA Partners, LLC, and MSAA Partners, LLC have sought concurrently herewith, the joint administration of the above-captioned debtors.

continue to use certain existing cash management systems, to replace and or add signatories at their discretion up to November 1, 2015, and for related relief. In further support of this Motion, the Debtors respectfully state as follows:

**I. JURISDICTION, VENUE, NOTICE, AND BACKGROUND**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory bases for the relief requested herein are Sections 105(a), 363, 364, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 4001(e).

3. Pursuant to Local Rule 9014.2, the Debtors consent to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

4. On August 11 and 12, 2015 (the "Petition Date"), the Debtors filed for relief under Chapter 11 of the Bankruptcy Code. The Debtors intend to continue to operate their business and manage their property as debtors in possession, pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has yet been established.

5. The *Omnibus Declaration in Support of the Debtors' First Day Motions and Applications* (the "Omnibus Declaration") filed concurrently herewith and incorporated herein by this reference provides a detailed discussion of the factual background and circumstances surrounding the Debtors' commencement of these Chapter 11 Cases, the Debtors' operations, the facts and circumstances necessitating entry of an order authorizing the relief requested herein.

6. Notice of this pleading has been provided by e-mail, facsimile, or overnight delivery to (a) the Debtors; (b) counsel for the Debtors; (c) any official committees appointed in the case and their respective counsel; (d) the Office of The United States Trustee, 300 Las Vegas

Boulevard South, Suite 4300, Las Vegas, Nevada 89101; (e) the top 20 largest unsecured creditors of each of the Debtors until any official committee for unsecured creditors is formed; (f) United States Attorney's Office, Attn: Civil Process Clerk, 333 Las Vegas Blvd. South, Suite 5000, Las Vegas, Nevada 89101; (g) United States Attorney's Office for the District of Nevada, United States Attorney's Office, 333 Las Vegas Blvd. South, Suite 5000, Las Vegas, Nevada 89101; (h) Nevada's Attorney General's Office, Grant Sawyer Building, 555 E. Washington Avenue, Suite 3900, Las Vegas, Nevada 89101; (i) Nevada's Department of Taxation, Bankruptcy Section, Grant Sawyer Office Building, 555 E. Washington Ave, Suite 1300, Las Vegas, Nevada 89101; (j) Mark Friedman, DLA Piper LLP, The Marbury Building, 6225 Smith Avenue, Baltimore, Maryland 21209-3600; (k) Scott M. Esterbrook, Reed Smith LLP, Three Logan Square, Suite 3100, 1717 Arch Street, Philadelphia, Pennsylvania 19103; (l) McLane Foodservice, Inc., c/o Eric R. Goodman, Baker Hostetler, PNC Center, 1900 East 9th Street, Suite 3200, Cleveland, Ohio 44114-3482; (m) A&W Restaurants, Inc., McGrathiana Parkway, Suite 380, Lexington, Kentucky 40511; (n) Clark County Treasurer c/o Bankruptcy Clerk, 500 S. Grand Central Parkway, Box 551220, Las Vegas, Nevada 89155-1220; (o) Clark County Assessor c/o Bankruptcy Clerk, 500 S. Grand Central Parkway, Box 551401, Las Vegas, Nevada 89155-1401; (p) Internal Revenue Service, P.O. Box 7346, Philadelphia, Pennsylvania 19105-1545; (q) Department of Employment, Training and Rehab, Employment Security Division, 500 East Third Street, Carson City, Nevada 89713; (r) Social Security Administration, Office of Regional Chief Counsel, Region IX, 160 Spear Street, Suite 800, San Francisco, California 94105-1545; and (s) all parties who request notices pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## II. LEGAL ANALYSIS

**A.     This Court Has Authority to Grant the Relief Requested.**

7.     Courts commonly approve a debtor's continued use of its prepetition cash management system, along with those related procedures and transactions used in the ordinary course of a debtor's business, particularly for a debtor with large and complex business

operations. For example, in *In re The Charter Co.*, 778 F.2d 617 (11th Cir. 1985), the bankruptcy court entered an order authorizing the debtor and forty-three subsidiaries "to continue to consolidate the management of its cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not Debtor herein." *Id.* at 618. The United States Court of Appeals for the Eleventh Circuit further ruled that authorizing a debtor to utilize its prepetition "routine cash management system" was "entirely consistent" with the provisions of the Bankruptcy Code, and in particular Section 363(c)(1), which allows a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." Id. at 621; *see also In re UNR Indus. Inc.*, 46 B.R. 25, 27 (Bankr. N.D. Ill. 1984) (debtor utilized "a court-approved and common cash management system known as 'Zero Balance Account.'"); *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987) (court noted that fierce hostility between the creditors therein even made difficult "seemingly simple matters such as [the debtor's] motion to continue existing bank accounts and cash management system . . .").

8.  Indeed, the purpose of Section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in those ordinary course transactions necessary to operate its businesses without unnecessary oversight by their creditors or the court. *See In re Lavigne*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Enron Corp.*, 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. 2003). Included within the scope of Section 363(c)(1) is a debtor in possession's ability to continue "routine transactions" required by such debtor's cash management system. *See In re Amdura Corp.*, 75 F.3d 1447, 1453 (10th Cir. 1996).

9.  Moreover, judicial approval of the continuity of a debtor's cash management system is provided from the statutory authority of Section 105, which allows a court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title," as well as carry out the core general principles of equity that form the foundation of the Bankruptcy Code. The authority for, and wisdom of, approving the continuation of a debtor's cash management system is so well established that courts generally enter orders approving the continuation of a debtor's cash management system at or shortly after the beginning of a

bankruptcy case, and most parties, recognizing the benefits to affiliated debtors from such systems, rarely contest these orders. *See, e.g., In re Lehman Brothers Holdings, Inc.,* 2008 WL 4902202, at *2 (Bankr. S.D.N.Y. 2008) (court authorized the debtor to continue using its prepetition cash management system and bank accounts pursuant to Sections 105(a) and 363(c)). When motions or orders to continue the use of a debtor's cash management system are contested, bankruptcy courts simply make conditions or amendments to their orders based on the facts and concerns presented in the cases before them. *See, e.g., In re The Colad Group, Inc.,* 324 B.R. 208, 216-217 (Bankr. W.D.N.Y. 2005) (court granted the continued use of the debtor's cash management system "for reasons of convenience," but required that any reordered company checks indicate the debtor's status as a debtor-in-possession); *In re Enron Corp.,* 279 B.R. 671, 692 (Bankr. S.D.N.Y. 2002) (court restricted some cash sweeps to non-debtor entities). Most reported decisions, however, that refer to a debtor's cash management system simply approve of the continuance of that debtor's system; thus, the inclusion of such information typically serves as no more than background to the legal issues that will be explored later in the opinion. *See, e.g., In re Kindred Healthcare, Inc.,* 2003 WL 22327933, at *1 (Bankr. D. Del. 2003) (court noted that on the petition date the debtor filed a motion for approval of its cash management system which was granted); *In re Interco, Inc.,* 130 B.R. 301 (Bankr. E.D. Mo. 1991) (order on motion to exempt debtor's foreign bank deposits from requirements of Section 345 referred to "Motion of Debtor and Debtor-in-Possession for Order Clarifying Order Authorizing Maintenance of Cash Management Systems and Continued Use of Certain Existing Bank Accounts, Investment and Deposit Guidelines and Certain Business Forms"); *In re FRG, Inc.,* 107 B.R. 461, 465 (Bankr. S.D.N.Y. 1989) (order on motion to transfer venue referred to "Application for Order Authorizing Maintenance of Cash Management Systems").

10. Uncertainty and risk surround the inception of every Chapter 11 case. Included within this class of risks is a debtor-in-possession's struggle to maintain current operations. In these Chapter 11 Cases, the Debtors urgently require the continued use of Debtors' cash management system and their accounts. Absent the cash management system and related accounts, there is the possibility that the Debtors' Chapter 11 Cases might flounder and creditors

be injured needlessly. To avert this prospect, the Debtors seek authority to continue the operation of their existing cash management system.

**B.      The Debtors Should Be Granted the Authority to Maintain Existing Bank Accounts.**

11.     As numerous courts have indicated, the Bankruptcy Code grants discretionary authority to a bankruptcy court to allow the continued use of bank accounts. *See, e.g., In re The Charter Co.,* 778 F.2d at 618 (noting that the bankruptcy court authorized Debtor to maintain its existing bank accounts); *In re Lorber Indus. of Cal.,* 373 B.R. 663, 665 (B.A.P. 9th Cir. 2007) (discussing that the bankruptcy court allowed the debtor to continue using its prepetition workers' compensation program bank account for the purposes of administering benefits*); In re Grant Broad., Inc.,* 75 B.R. 819, 820 (E.D. Pa. 1987) (noting an order by the bankruptcy court authorizing use of cash collateral and prepetition bank accounts); *In re Charter Behavioral Health Systems, LLC,* 292 B.R. 36, 41 (Bankr. D. Del. 2003) (allowing the debtor to continue to use its existing bank accounts without the necessity to close all prepetition accounts and open new post-petition accounts); *In re Hechinger Inv. Co. of Del., Inc.,* 282 B.R. 149, 150 (Bankr. D. Del. 2002) (entering an order on the petition date authorizing the debtor to continue using its existing prepetition bank accounts); *In re UAL Corp.,* 2002 WL 34344255, 1 (Bankr. N.D. Ill. 2002) (authorizing debtors, within the reasonable exercise of their business judgment, to continue using all of their bank accounts in existence on the petition date); *In re New York City Shoes, Inc.,* 78 B.R. 426, 427 (Bankr. E.D. Pa. 1987) (approving of the debtor's continued routine deposits of post-petition funds into prepetition bank accounts).

12.     While the Office of the United States Trustee for Region 17 (the "UST") has established certain operating guidelines for debtors in possession in Chapter 11 cases, the goals of these guidelines can be satisfied while maintaining the Debtors' accounts. For instance, these guidelines require a debtor in possession to, among other things, (a) close all existing bank accounts and open new accounts, (b) obtain checks for all debtor-in-possession accounts that bear the designation "Debtor in Possession" and the bankruptcy case number and (c) deposit funds only in authorized financial institutions. *See* Operating Guidelines and Reporting Requirements of the United States Trustee for Chapter 11 Debtors-In-Possession

(www.usdoj.gov/ust/r17) § 4.4.6.  These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments to help prevent the inadvertent payment of a prepetition claim by preventing banks from honoring checks drawn before the bankruptcy filing.  The Debtors submit that this goal can be achieved without closing the Debtors' accounts and dismantling their cash management system.

13.   Prior to the Petition Date, the Debtors, in the ordinary course of their business, maintained the bank accounts ("Bank Accounts") shown on **Exhibit 2** hereto.  The Bank Accounts consist of a depository account ("Deposit Account") for each store location, as indicated in the columns entitled Deposit Bank and Deposit Account Number, and a main operating account ("Operating Account") in the name of each individual Debtor, as indicated in the column entitled Main Operating Account.   The Operating Accounts are located at the Bank of America.

14.   The cash management system (the "Cash Management System") is as follows: The Debtors' store managers deposit the daily cash received by each store into a Deposit Account.  All of the Deposit Accounts are zero balance accounts and transfer all of their net deposits into Debtors' corresponding Operating Account.  Funds are moved between Debtors on an as needed basis.  General Electric (as defined in the Omnibus Declaration) has a security interest in all of the Debtors' assets, and the proceeds therefrom, which secures the total indebtedness to General Electric.  All disbursements, including the funding of payrolls through a third party payroll company, are made from the Operating Account for each of the Debtors.

15.   Credit card proceeds received incident to credit card sales made at the various restaurants are deposited into the Operating Accounts for each of the Debtors.

16.   Replicating the Cash Management System currently in use would be difficult. One of the problems in closing existing bank accounts would be that doing so would disrupt the flow of funds at the Debtors' stores into the Operating Account and payment of credit card purchases to the accounts of the Debtors.  It would be difficult to cancel and reestablish the provisions in place to process credit card purchases without substantial inconvenience and potential disruption of the Debtors' business.  The Debtors' business is primarily a cash business

Garman Turner Gordon LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
(725) 777-3000

7

and the flow of funds into the Operating Accounts is necessary to pay vendors who supply goods on a regular basis. For example, payments to McLane Foodservice, Inc. are made every three (3) days for eighty percent (80%) of each Debtor's needed goods.

17. The Debtors seek a waiver of the UST's requirement that the Bank Accounts be closed and new postpetition accounts be opened. The Debtors do not anticipate operating any restaurants after that time in light of the sales transaction they have been negotiating and after which maintaining the current Cash Management System will be unnecessary. If enforced in this case, the UST's requirement would cause undue disruption to the Debtors' cash flow and business operations. In order to continue operations and preserve the value of their business, the Debtors need to be able to continue to issue checks to vendors, service providers, and others.

18. As set forth above, courts routinely waive the strict enforcement of bank account closing requirements and replace them with alternative procedures that provide the same protection.

19. A similar waiver of the account closing requirement is necessary on a temporary basis here. The Debtors are seeking authority for a limited amount of time to maintain and continue the use of these accounts in the same manner and with the same account numbers, styles, and document forms as those employed during the pre-commencement period.

C. **The Debtors Should Be Granted Authority to Use Existing Business Forms, Checks, and Records.**

20. To minimize expenses to the estates, the Debtors also request authority to continue to use all correspondence and business forms (including, but not limited to, letterhead, purchase orders, invoices, etc.), as well as checks and bookkeeping records existing immediately before the Petition Date. The use of the forms is essential and required under the franchise agreements executed between the Debtors and their franchisors.

21. Changing correspondence and business forms would be unnecessarily burdensome to the estates, as well as expensive and disruptive to the Debtors' business operations. These additional costs would reduce the resources available in the estates to satisfy the claims of creditors and other parties in interest. Similarly, opening a new set of books and

records as of the Petition Date would create unnecessary administrative burdens and expense. For these reasons, the Debtors request authority to continue to use their existing records as well as their checks and business forms and to not close the existing books and open new books and records for the Debtors as of the Petition Date. The existing books and records of the Debtors are sufficient to allow the Court and parties in interest to differentiate between financial transactions which occurred prior to and subsequent to the Petition Date.

**D.     Continuation of the Existing Cash Management System Is in the Best Interests of the Debtors' Estates and Creditors.**

22.     The Debtors maintain current and accurate accounting records of daily cash transactions and submit that maintenance of this Cash Management System will prevent undue disruption to their business and operations, while protecting the cash for the benefit of the estates.

23.     The basic structure of the Cash Management System described herein constitutes the Debtors' ordinary, usual, and essential business practice. The Cash Management System is similar to those commonly employed by corporate enterprises of comparable size and complexity to the present cases. The widespread use of such systems is attributable to the numerous benefits they provide, including the ability: (a) to tightly control corporate funds; (b) to ensure cash availability; and (c) to reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance and presentment information.

24.     Accordingly, the Court should authorize the continued use of the existing Cash Management System for the limited time period requested.

25.     As discussed above, courts routinely grant chapter 11 debtors authority to continue utilizing existing cash management systems and treat requests for such authority as a relatively "simple matter." *In re Baldwin-United Corp.,* 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); see *also In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) (affirming decision denying a creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that authorizing the debtor to utilize its prepetition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code).

26. It is important to both the continued operation of the business and to the preservation of the value of that business that the Debtors be allowed to continue to utilize the existing Cash Management System without disruption. Accordingly, it is appropriate and consistent with applicable provisions of the Bankruptcy Code and applicable case law for the Court to approve the continued use of the Cash Management System in its current form for the limited period of time requested.

E. **The Court Should Authorize the Depositing of Funds in Accordance with Prepetition Practices.**

27. Pursuant to Section 105(a) of the Bankruptcy Code, the Debtors seek a waiver of the requirements of Section 345(b) of the Bankruptcy Code. Bank of America is a qualified financial institution in a number of jurisdictions and the Deposit Account banks hold the Debtors' funds for less than 24 hours. Consequently, a waiver of the requirement to comply with Section 345(b) investment guidelines should pose no risk to the estates or creditors.

28. The Debtors submit that cause exists for the Court to allow the Debtors to continue depositing cash in accordance with Debtors' past business practices.

29. Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Courts have long recognized that the power granted by Section 105(a) was expressly meant to be exercised to effectuate the rehabilitation of the debtor. See, e.g., *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 16 (1977)). The relief requested in this Motion is important to the successful reorganization or liquidation and is justified under Section 105(a).

30. Extensive authority supports the relief the sought in this Motion. Courts have often waived certain requirements and replaced them with alternatives.

F. **The Requirements of Bankruptcy Rule 6003 Have Been Satisfied and Bankruptcy Rule 6004(h) is Properly Waived.**

Pursuant to Sections 105(a) and 363(c)(1) of the Bankruptcy Code, the Debtors request that this Court authorize the Debtors to continue the collection, concentration, and disbursement

of cash in accordance with its existing Cash Management System, including the maintenance of their existing Bank Accounts. Because the Debtors process large amounts of cash on a daily basis to facilitate the unique needs of their businesses, any disruption to the Cash Management System or the Bank Accounts would seriously harm the Debtors and the estates.

Bankruptcy Rule 6003(b) provides "except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before filing of the petition. . . ." As described above and in the Omnibus Declaration, if the Cash Management System or Bank Accounts are disrupted, the Debtors will experience immediate and irreparable harm. To ensure the Debtors' chances of successfully reorganizing and maximizing value for the Debtors' creditors, this Court should find that the exception set forth in Bankruptcy Rule 6003 applies in these Chapter 11 Cases.[2]

Moreover, Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." In view of the urgency of the relief requested herein and the risk to the Debtors' operations if Debtors' Cash Management System or the Bank Accounts are interrupted, a fourteen-day stay of the relief sought herein is impractical. Accordingly, the Debtors request that this Court waive the stay under Bankruptcy Rule 6004(h) and provide in the Order granting the relief sought herein that such Order shall be effective immediately.

. . .

. . .

. . .

. . .

. . .

---

[2] To the extent any of the relief requested herein is not granted on the Petition Date, in the alternative, and out of an abundance of caution, the Debtors request that the Court set a final hearing on any remaining matters on the earliest available date that is more than 21 days after the Petition Date pursuant to Rule 6003.

**WHEREFORE**, the Debtors respectfully request entry of an order in the form attached hereto as **Exhibit "1"** and for such other or further relief as is just.

Dated this 12th day of August, 2015.

GARMAN TURNER GORDON LLP

By: */s/ Talitha Gray Kozlowski*
GERALD M. GORDON, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARK M. WEISENMILLER, ESQ.
650 White Drive, Suite 100
Las Vegas, NV 89119

and

HELLER, DRAPER, PATRICK, HORN
 & DABNEY, L.L.C.
DOUGLAS S. DRAPER, ESQ.
LESLIE A. COLLINS ESQ.
GRETA M. BROUPHY, ESQ.
650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103

*Proposed Attorneys for Debtors*